Kristofer D. Leavitt, ESQ
LEAVITT LEGAL GROUP, P.C.
Nevada Bar No 13173
229 S Las Vegas Blvd,
Las Vegas, Nevada 89101
(702) 423-7208
LeavittLegalGroup@gmail.com

*Attorney for Plaintiff Nicole Houle*

## UNITED STATES DISTRICT COURT

### DISTRICT OF NEVADA

| | |
|---|---|
| NICOLE HOULE,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>THE MIRAGE CASINO-HOTEL LLC; BAR TENDER'S UNION 165;<br><br>　　　　　Defendants. | Case No.: 2:17-cv-00258-GMN-GWF<br><br>**FIRST AMENDED COMPLAINT**<br><br>and<br><br>**DEMAND FOR TRIAL BY JURY** |

Plaintiff, Nicole Houle, (hereinafter as "Ms. Houle" or "Plaintiff"), by and through her counsel at the law firm of Leavitt Legal Group, alleges as follows:

### JURISDICTION AND VENUE

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 185(a).

2. The Court also has supplemental jurisdiction, when necessary, pursuant to 28 U.S.C. § 1367.

3. Plaintiff is an individual residing in this judicial district and is a resident of the State of Nevada.

4. Defendants are a corporate entity and a labor organization located in this judicial district.

5. Plaintiff's claims arise out of Defendants' activities in this judicial district.

6. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b).

## PARTIES

7. Plaintiff Nicole Houle is, and has been all times relevant to the claims herein, a resident of Clark County in the State of Nevada.

8. Defendant The Mirage Casino-Hotel LLC (the "Mirage") is, and has been at all times relevant to the claims herein, a Limited Liability Company incorporated under the laws of the State of Nevada and conducting business in Clark County.

9. Upon information and belief, Defendant Bar Tender's Union 165 (the "Union") is, and has been at all times relevant to the claims herein, a labor organization chartered under the laws of the State of Nevada and representing individuals in Clark County Nevada.

## GENERAL ALLEGATIONS

10. In August 2013, Plaintiff began working in Tom Colicchio's Heritage Steak (the "Heritage") located inside the Mirage Hotel and Casino (the "Hotel") in Las Vegas, Nevada and, as part of her employment, was represented by the Union.

11. Shortly after beginning her employment, several of Plaintiff's coworkers began engaging in wildly inappropriate sexual activity at work.

12. On a daily basis, several of Plaintiff's male coworkers would approach my female coworkers from behind, press their genitals into the female's buttocks or lower back, and touch the female's breasts or genitalia.

13. It was also a common occurrence for Plaintiff's male coworkers to touch and caress the breasts and genitalia of Plaintiff's female coworkers and for male coworkers to expose their genitals to female coworkers so the female coworkers could touch the male coworkers genitals.

14. These activities took place at various places within the Heritage, including, but not limited to, the Point of Sale System between the bar area and the lounge area; the service hallways behind the bar area; and the walk-in cooler attached to the service hallways behind the bar area.

15. When Plaintiff learned of these activities she began attempting to avoid areas at the Heritage where there was a higher frequency of sexually inappropriate contact and expressed

to her coworkers that their actions were making her extremely uncomfortable.

16. Despite Plaintiff's concerns, her coworkers continued touching one another in an inappropriate manner until, in October 2015, Plaintiff became overwhelmed and was reduced to tears while she was at work.

17. Plaintiff's General Manager observed Plaintiff sobbing, discussed the matter with Plaintiff, and informed The Hotel's Human Resources Department of the actions of Plaintiff's coworkers.

18. The Mirage discussed the matter with Plaintiff and informed her that they would only investigate her allegations if she provided a written statement to corroborate her testimony.

19. Plaintiff, fearing retaliation from her coworkers, declined to provide a written statement but assured the Mirage's Human Resources Department that the activities she described were a common occurrence that could have been discovered in an investigation.

20. Despite this reassurance, the Mirage failed to conduct an investigation into Plaintiff's complaints.

21. Because the Mirage failed to conduct an investigation, Plaintiff's coworkers continued their pattern of sexually inappropriate touching.

22. After several additional months, Plaintiff was once again pushed to an emotional breaking point and, in April 2016, Plaintiff informed her coworkers that she was going to file a formal complaint with the Mirage's Human Resources department if their antics did not stop immediately.

23. Despite her warning, Plaintiff's coworkers persisted in their inappropriate conduct.

24. As a result, Plaintiff informed the Mirage's Human Resources Department of her coworkers' inappropriate sexual conduct.

25. As part of her complaint, Plaintiff also provided the Mirage and the Union with the names of several employees who could corroborate her claims.

26. Following Plaintiff's second complaint to the Mirage's Human Resources Department, many of Plaintiff's coworkers began systematically isolating her while she was at

work, talking about her in derogatory terms, and making thinly-veiled threats against her to other coworkers.

27. Plaintiff was also informed that one of her coworkers, Dariusz Nastal ("Nastal"), made several threatening social media posts regarding her.

28. On May 12, 2016, Plaintiff personally witnessed one of her coworkers, Cassandra Kennedy ("Kennedy"), touching the exposed genitals of Nastal in one of the service hall ways in the Heritage.

29. In the 48 hours following this event, Nastal sent Ms. Houle many text messages where he begged her not to tell Human Resources about what she witnessed, called her derogatory names such as "rat," made several threats against her, asserted that she was ruining the lives of him and several other coworkers, and informed her he was going to kill himself if he lost his job.

30. The Mirage's Human Resources Department suspended Nastal, Kennedy, Weston Rice ("Rice"), and Lindsay Howard ("Howard"), all of whom worked with Plaintiff, and began an investigation of Plaintiff's claims.

31. During their suspensions, Nastal, Kennedy, Rice, and Howard all conspired together to fabricate a story about how Plaintiff's complaints were meritless and that she was motivated to fabricate her complaints because Nastal had rejected several of her romantic advances.

32. Despite their conspiratorial efforts, Nastal, Kennedy, and Rice were terminated.

33. Howard was subsequently reinstated following a union grievance process, but was brought back on a final written warning and was specifically instructed that she could not say or do anything to retaliate against Plaintiff or she would be terminated.

34. Nastal, who is also member of Ms. Houle's Union, also filed a grievance, which resulted in him being approved to return to work on November 2, 2016.

35. The Mirage and the Union informed Plaintiff of this development on October 27, 2016, immediately before a three day weekend and only two business days before Nastal would return to work.

36. Plaintiff immediately objected and expressed concerns about Nastal jeopardizing her personal safety and continuing the actions that created a hostile work environment for Plaintiff before she was terminated.

37. Additionally, when Plaintiff first learned of Nastal's efforts to seek reinstatement she expressed her objection to the Union and once again provided the names of several coworkers who could corroborate her claims against Nastal.

38. Despite Plaintiff's objections, she was informed that she had no one representing her interests and that she was "blowing in the wind."

39. When she questioned why she did not have someone to represent her interests, she was informed by the Union that representing Nastal and Plaintiff would be a conflict of interest and that there was nothing the Union could do for her.

40. The Mirage's Human Resources Department attempted to assuage Plaintiff's concerns by informing her that Nastal had been instructed to be on his best behavior once he returns.

41. When Howard returned to work, she initially followed the Mirage's instructions in regards to Plaintiff, however, she eventually began retaliating against Plaintiff.

42. When Nastal returned to work, he and Howard began retaliating against Plaintiff, which included conspiring together to file a false complaint against Plaintiff.

43. Plaintiff believes Hastal and Howard are attempting to undermine her credibility at work and have her terminated.

44. Plaintiff has informed the Mirage and the Union of Nastal and Howard's actions, but nothing has been done to investigate these claims or prevent Nastal and Howard from succeeding in their objective.

45. Additionally, the Mirage has instructed other employees to not socialize with Plaintiff, and has even directed at least one employee to sever her connections with Plaintiff on social media as a result of her complaints.

### FIRST CAUSE OF ACTION
**Sexual Harassment/Hostile Work Environment – Against the Mirage**

46. Plaintiff hereby incorporates all of the allegations contained in Paragraphs 1 through 45 as if fully set forth herein.

47. Plaintiff's coworkers engaged in verbal and/or physical conduct that is of a sexual nature by, among other things, constantly touching one another in an inappropriate manner.

48. This conduct was offensive to Plaintiff and was sufficiently severe and pervasive to alter the terms and conditions of her employment and create an atmosphere that was intimidating, hostile, and/or abusive.

49. Given the frequency and longevity of these events, as well as Plaintiff's complaints, the Mirage knew, or should have known, about these actions but failed to take sufficient action to prevent these actions from occurring or otherwise remedy the situation.

50. As a result of the actions of her coworkers and the Mirage's refusal to prevent the actions of her coworkers, Plaintiff has suffered severe psychological and emotional damages.

51. As a result of the actions of her coworkers and the Mirage's refusal to prevent the actions of her coworkers, Plaintiff has also found it necessary to retain Leavitt Legal Group to pursue this action, and, as a result, Plaintiff is entitled to reasonable attorneys' fees and costs.

52. Plaintiff is also entitled to any other relief or remedy the Court deems just and proper.

### SECOND CAUSE OF ACTION
**Retaliation – Against the Mirage**

53. Plaintiff hereby incorporates all of the allegations contained in Paragraphs 1 through 52 as if fully set forth herein.

54. Plaintiff engaged in protected activity when she, among other things, informed the Mirage's Human Resources Department of the inappropriate actions of her coworkers.

55. Plaintiff suffered an adverse employment action when the Mirage failed to investigate Plaintiff's complaints and she was forced to continue working in an environment that she found to be intimidating, hostile, and/or abusive.

56. Moreover, the Mirage knows, or should have known, of Nastal and Howard's attempts to undermine Plaintiff's credibility and jeopardize her employment, but the Mirage has taken no action to investigate or remedy these problems.

57. The Mirage has also instructed at least one of its employees to sever their social media connections with Plaintiff as a result of her complaints.

58. As a result of the Mirage's action and/or inaction, Plaintiff has suffered severe psychological and emotional damages.

59. As a result of the actions of her coworkers and the Mirage's refusal to prevent the actions of her coworkers, Plaintiff has also found it necessary to retain Leavitt Legal Group to pursue this action, and, as a result, Plaintiff is entitled to reasonable attorneys' fees and costs.

60. Plaintiff is also entitled to any other relief or remedy the Court deems just and proper.

### THIRD CAUSE OF ACTION
**Intentional Infliction of Emotional Distress – Against the Defendants**

61. Plaintiff hereby incorporates all of the allegations contained in Paragraphs 1 through 60 as if fully set forth herein.

62. Defendants' conduct, which included allowing Nastal to return to work after flagrantly causing a hostile work environment for Plaintiff and not preventing retaliation by Nastal and Howard against Plaintiff, is extreme or outrageous conduct.

63. By allowing this conduct Defendants either intended to cause, or disregarded a substantial probability of causing, sever emotional distress to Plaintiff.

64. Defendants' conduct has caused, and continues to cause, sever emotional distress to Plaintiff.

65. As a result of Defendants' actions Plaintiff has also found it necessary to retain Leavitt Legal Group to pursue this action, and, as a result, Plaintiff is entitled to reasonable attorneys' fees and costs.

66. Plaintiff is also entitled to any other relief or remedy the Court deems just and proper.

## FOURTH CAUSE OF ACTION
### Negligent Supervision, Training, and Retention – Against the Defendants

67. Plaintiff hereby incorporates all of the allegations contained in Paragraphs 1 through 66 as if full set forth herein.

68. Because of the duration and frequency of the inappropriate actions of Plaintiff's coworkers as well as Plaintiff's complaints, and her proffer of corroborating witnesses, Defendants knew or should have known that Nastal, Howard, or both, were involved in creating a hostile work environment for Plaintiff.

69. Defendants, however, failed to adequately investigate these claims and have subsequently retained Howard and re-hired Nastal.

70. Additionally, Defendants have failed to properly supervise and/or train Nastal and Howard as they continue to retaliate against Plaintiff, attempt to undermine her credibility, and jeopardize her employment.

71. As a result of Defendants' actions Plaintiff has also found it necessary to retain Leavitt Legal Group to pursue this action, and, as a result, Plaintiff is entitled to reasonable attorneys' fees and costs.

72. Plaintiff is also entitled to any other relief or remedy the Court deems just and proper.

## FIFTH CAUSE OF ACTION
### Breach of Duty of Representation – Against the Union

73. Plaintiff hereby incorporates all of the allegations contained in Paragraphs 1 through 60 as if full set forth herein.

74. The Union has a duty to fairly and impartially represent all members of its bargaining unit.

75. The Union breached that duty when it failed to represent Plaintiff's interests when seeking to return Nastal to work.

76. More specifically, the Union completely disregarded Plaintiff's testimony that Nastal was engaged in inappropriate sexual activity at work.

77. The Union also failed to interview any of the witnesses provided by Plaintiff that could have corroborated the fact that Nastal was engaged in inappropriate sexual activity at work.

78. As a result of the Union's breach, Plaintiff has suffered severe psychological and emotional damages.

79. As a result of the Union's breach, Plaintiff has also found it necessary to retain Leavitt Legal Group to prosecute this action, and Plaintiff is entitled to reasonable attorneys' fees and costs.

80. Plaintiff is also entitled to any other relief or remedy the Court deems just and proper.

WHEREFORE, Plaintiff prays for relief as follows:

1. Actual and compensatory damages in an amount to be ascertained at trial;
2. Punitive damages in an amount sufficient to punish Defendants and deter other from like conduct;
3. Prejudgement interest
4. For costs of suit incurred herein;
5. For reasonable attorneys' fees;
6. For other such relief as the Court may deem just and proper.

### DEMAND FOR JURY TRIAL

Please take notice that pursuant to Fed. R. Civ. P. 38, Plaintiff hereby demands a trial by jury in this action.

DATED this 6th day of February, 2017.

LEAVITT LEGAL GROUP, P.C.

By: ____/s/ Kristofer Leavitt_____
Kristofer D. Leaivtt, Esq. (13173)
229 S Las Vegas Blvd,
Las Vegas, Nevada 89101

*Attorney for Nicole Houle*